This is a suit under the Workmen's Compensation Act, Act No. 20 of 1914, as amended, wherein it is alleged that on and before November 21, 1947, the plaintiff was employed by Bon Ami Company at its sawmill in the Parish of Beauregard, and that on or about November 21, 1947 at 4:00 P.M. or a little thereafter, plaintiff sustained an accident in the course and scope of his employment which resulted in injuries which rendered him totally and permanently disabled from performing work of a reasonable character. It is shown that plaintiff is a common laborer and was at the time of his alleged injuries earning a weekly wage of about $38.00. He sets forth in his petition that he has never received any compensation nor medical benefits and prays for judgment at the rate of $20.00 per week for a period not to exceed 400 weeks plus legal interest on delinquent installments from due date plus $500.00 for medical expenses.
The defendant, in its answer, admits the employment of plaintiff as a manual laborer in its sawmill but denies all the other material allegations of plaintiff's petition. The answer sets forth that plaintiff did suffer a minor accident on October 24, 1947, which accident resulted in no compensable injury and that moreover, any claim arising from said accident is preempted because of it having occurred more than one year prior to filing of this suit. The answer further sets forth that no accident or injury was sustained by plaintiff on November 21, 1947, on which date he was discharged from his job in the defendant sawmill. In the alternative, the defendant shows that should it be found that plaintiff did sustain an accident on November 21, 1947, while in defendant's employ, that the only accident ever sustained by plaintiff was a bruise on the right side of his abdomen which caused no loss of time or disability whatsoever.
After trial of the case, the District Court, for written reasons assigned, granted judgment in favor of plaintiff in the sum of $20.00 per week not to exceed 400 weeks, together with interest on each unpaid weekly instalment from due date, together with *Page 255 
all costs, including expert fees. On rehearing, the District Court amended its judgment by limiting the compensation to a period not to exceed 100 weeks from November 21, 1947. Defendant has appealed.
The testimony in this case is contradictory with reference to every item thereof except the actual employment.
There are three issues in the case: First, and most important, is whether or not plaintiff sustained any accident in defendant's employ on November 21, 1947. The second issue is if the accident was sustained, whether or not it resulted in a compensable disability. Third, if the accident was sustained and resulted in a compensable disability, what is the extent of that disability.
The evidence with reference to the first issue as to whether or not an accident was sustained by plaintiff on the date and at the place alleged consists of the testimony of the plaintiff himself and two alleged co-workers as to the actual occurrence of the accident plus the contradiction of said testimony by Mr. Turner, the plaintiff's foreman, and Mr. Deal, Superintendent of the sawmill plant.
Plaintiff testifies positively that at about 4:30 in the afternoon, he and Hardy Willis and Hershey Vaughn were working together at the re-saw or rip-saw handling large timbers which measured 2 by 12 and 14 to 20 feet in length and weighing about 200 pounds; that while he and Vaughn were engaged in fitting one of these heavy timbers to the saw, with Vaughn at the front end thereof and plaintiff at the rear end, Vaughn slipped and caused plaintiff to stumble and as a result, the timber struck plaintiff in the abdomen and caught inside his belt, jerking him down on his buttock; that the timber was thereupon removed from plaintiff by Hardy Willis, and plaintiff, as a result of the accident, suffered pain and nausea and upon being lifted to his feet walked away a short distance and rested for the remainder of the day leaning against a post.
Plaintiff further states that while he was in his resting position, Mr. Deal came by and told him to do certain work but that he, plaintiff, then and there told Deal that he had been injured.
Plaintiff's version of the accident is corroborated entirely by Vaughn and Willis, including the fact that he had a conversation with Mr. Deal shortly after the accident occurred. Both of these witnesses state that they do not know what the conversation was about because they could not hear what was being said due to the noise made by the saws.
Mr. Deal denies that he had any such alleged conversation with the plaintiff and both he and Mr. Turner, the Foreman, state that they were in and around the sawmill where plaintiff was working during the afternoon and that neither saw nor heard anything about the alleged accident. They testify further that plaintiff was not working at the re-saw or the rip-saw but was working on a double end trimmer; that Turner told Deal that plaintiff was too slow to do the work and that he should be discharged and that accordingly Deal wrote out a check for plaintiff's time and gave it to Turner for the purpose of discharging plaintiff. Turner states that he gave the check to plaintiff at the double end trimmer at about 4:45 o'clock P.M. and told him that he was discharged.
Plaintiff admits that he was given a check and he was discharged, but states that the check was given to him after working hours at the bus on their way home. He is corroborated again by Willis and Vaughn, who state that they were present at the scene until closing time and that they did not see Turner give plaintiff the check as testified by Turner. Willis states that he saw Turner give a check to plaintiff at the bus or truck used to return the employees to their homes.
It is admitted by Turner that while plaintiff has been employed at the sawmill at various jobs for some three months, no complaint was ever made to him about his work until the actual discharge on the day of the alleged accident.
Turner testified further that on the actual evening of the accident at about 6:30 he ran across plaintiff in town and that plaintiff at that time told him that he didn't mind *Page 256 
having been discharged and that he was going to Longville to work; that plaintiff never mentioned anything about the accident or injuries to him at the time nor at any other time until some two or three weeks later.
Deal also testifies that he had no information with reference to the alleged accident either through his foreman, Turner, or anyone else until the petition in this suit was filed. He admits that he did receive a letter from the attorneys for plaintiff but that this letter was turned over to the adjuster for his insurance company.
It is testified by plaintiff and corroborated by his step-son, Fred Rainwater, that on the night of the accident he spent the night at his home in bed suffering great pain in his back and abdomen and that Fred Rainwater applied hot compresses on the places wherein he complained of pain. There is some doubt cast upon this testimony by the testimony of Mrs. W. J. Valdays, witness for plaintiff, called on rebuttal, who testified that she lived in the same house as plaintiff and who states that she was present with plaintiff and his wife on the night of the accident until about 10:00 in the evening when everyone went to bed. She does state that it seems to her that Fred Rainwater was there but is rather uncertain on that point and she testifies however that she got up at 3:00 o'clock in the morning and at that time the plaintiff's wife had just made coffee for him and had hot towels on his back. She further testifies that plaintiff was in effect confined to his home from the date of the accident until after Christmas of the same year except for visits to the doctor.
Plaintiff testifies that on the morning after the accident, to-wit on November 22, 1947, he went to see Dr. J. D. Frazar about his trouble and he is corroborated in that respect by Jesse Rainwater, another step-son, who states that he took him to the Frazar clinic. Dr. Frazar admits that he saw the plaintiff on November 28, 1947 in the evening just before he closed his office and that at that time plaintiff complained of pain in his abdomen and in his back and that plaintiff was obviously suffering pain and that accordingly he gave him medicine to relieve the pain. He states that he told plaintiff that he would like to have an order from his employer to have X-rays taken of his back and that his records show that an X-ray was taken on December 4, 1947; that "the only thing the X-ray revealed was he had this spinal process of the vertebra, extended up and contacted the pelvis on each side, butterfly, I call it." Dr. Frazar states that the condition was not caused by the accident but that the accident possibly aggravated the pain or caused the pain. This doctor admits on cross-examination that his testimony is based on his records only and that it is possible that plaintiff did call on him on November 22, as testified by the plaintiff but that his records do not show this nor does he recall it. He does not recall whether or not he received authority from the company to take an X-ray of plaintiff's back but admits that he probably did or else the X-ray would not have been made. He further testifies that he had no knowledge that plaintiff had been discharged at the time he examined him.
It may be noted at this point that it is admitted that plaintiff suffered a minor injury on October 4, 1947 when a stick flew from one of the saws and struck him on the stomach or chest, and it is implied by defendant that the only examination made by Dr. Frazar was because of this injury. However, while it appears that he was examined for this minor injury, it seems admitted that he never lost any time from his work on account of it and that he never made any further complaint based on that particular accident. It does not seem that the examination by Dr. Frazar on November 28th or the X-ray of December 4th had any reference to that accident.
It is admitted that plaintiff, after his alleged accident, worked for another sawmill, to-wit the Beauregard Lumber Industries from about March 1st until August 12, 1948. In connection with that work witness J. O. Slaydon testifies that he was working with the mill construction gang doing ordinary labor. Being a bookkeeper, witness Slaydon admits that he had no knowledge of the outside work; that he only knew that he was working in a mill *Page 257 
construction crew under a Mr. Duke; that in so far as losing time on the job, it wasn't over a day or two at a time; that he got "pretty full pay days" all the time.
With reference to this last job of plaintiff, we have the testimony of W. P. Wilson, who testified that he worked with plaintiff on this job and that during this time he complained of his back hurting him all the time and testified further with reference as to whether he had a heavy job or a light job, as follows, "They kept him on the ground picking up scrap and things like that. They never did use him on top of the building."
With reference to the disability of plaintiff, we have the testimony of Dr. Frazar, the first doctor who examined him, which has been reviewed above, to the effect that plaintiff was treated by him, according to his records, first on November 28, 1947, and possibly before that, and was X-rayed on December 4th. Dr. Frazar states that plaintiff was obviously suffering pain and gave a history of an accident in November and that the X-ray revealed a spinal process which could very well have been aggravated by the alleged accident although, in his opinion, not caused thereby. Dr. Frazar testifies further that he treated plaintiff, according to his records, about four times.
Dr. Thomas R. Sartor called by plaintiff testified that he examined and treated him professionally in about December, 1947 and that after his examination and consultation he diagnosed plaintiff's condition as, "I believe probably arthritis of some kind of the lower back." He states for his condition he prescribed salicylates for relief and also prescribed hard bed sleeping. He states with reference to his opinion as to the cause of his condition, "Well, I don't know, other than the history he gave of an injury." He states that the condition could have been caused by an injury; that the condition was of traumatic origin and that at the time of his examination, plaintiff's condition was such as to prevent him from doing hard manual labor. He further testified that he recommended to plaintiff that he go to the State Charity Hospital so that an X-ray study of his back could be made but that as far as he knows, plaintiff never did this. Dr. Sartor does not appear to have seen plaintiff more than twice.
It is noted at this point that this is the only doctor who plaintiff consulted or sought medical aid, advice or treatment and then only twice. His only excuse for not following Dr. Sartor's recommendation to go to the State Charity Hospital at Shreveport was the lack of funds. The only outlay of funds by plaintiff would have been his train or bus fare from DeRidder to Shreveport, which appears to us to be nominal if plaintiff had been in earnest in seeking medical aid and benefit. He should have shown that he had made an earnest attempt to follow Dr. Sartor's advice.
Dr. Luke Marcello testified that he made a complete physical examination of plaintiff including X-ray of the thoracic lumbar spine on about December 20, 1948 and that at that time he found no disability. He states that plaintiff gave a history of having been struck in the abdomen on the right side some time in November, 1947; that his main complaint was pain in the right side of the stomach; that he also complained of some pain in the back, which was the reason for making the X-ray; that the X-ray showed nothing of significance. He testifies that the X-ray did not disclose any injury to the ligaments or muscles and in effect maintains that any disability plaintiff may have had at that time was purely subjective; that objectively, he found no reason for the pain of which plaintiff complained. He was of the opinion that plaintiff was fully able to do hard manual labor on the date of his examination.
It is obvious from the review of the testimony that the witnesses on one side or the other have not testified truthfully especially with reference to the actual occurrence of the accident on November 21, 1947. The minor accident on October 24, 1947 has been injected into the case by the defendant's answer apparently to show a background for a possible faked claim by plaintiff on the subsequent date; but, in view of the fact that it is admitted by all parties that the accident of Oct. 24th was slight and caused no loss of time by plaintiff and was known to his employer and *Page 258 
to his employer's doctor, Dr. Frazar, it does not seem very material herein. The serious question is whether or not plaintiff and his corroborating witnesses, Vaughn and Willis, are telling the truth as to what occurred at the sawmill at about 4:30 P.M. on November 21, 1947. In that connection, counsel for defendant brings out the fact that it is undisputed that on that particular afternoon the plaintiff was discharged and counsel in effect implies that as a result of this discharge plaintiff has cooked up this claim for compensation. On the other hand, the discharge of plaintiff was made on the ground and theory that he was too slow to do the work for which he was called upon and yet it is admitted that no complaint was ever previously made to him with reference to his work although he had been working for some three months. It is peculiar that he should have been discharged on that one particular day without any previous warning.
It may be noted further that it is admitted by Mr. Deal that he received a letter from the attorneys for the plaintiff prior to the filing of his suit and that, for reasons of his own, he paid no particular attention to that letter but turned it over to the adjuster for his insurer.
For us to conclude that the plaintiff sustained no accident on November 21, 1947, as alleged, we would have to find that he and his coworkers, Willis and Vaughn, deliberately lied and the only basis to find this would be that Mr. Turner was present at the alleged time and was able to see whether an accident happened or not and that no such accident happened. We would also have to find that plaintiff lied in his testimony with reference to his conversation with Mr. Deal and that Mr. Deal told the truth when he said that no such conversation occurred on the afternoon of the alleged accident.
In support of plaintiff's contentions we do have the positive testimony of his stepsons, of Mrs. Valdays and of witness W. P. Wilson that he complained of a painful back subsequent to the date of alleged accident; that he was confined to his home for approximately one month and a half. We also have the testimony of Dr. Frazar to the effect that he treated him at least from November 28, 1947 and some four or five times thereafter and discharged him on or about December 18, 1947; that plaintiff was obviously in pain during that period. On the other hand, as contended by counsel for defendant, it is difficult to see why Mr. Deal, the superintendent and Mr. Turner, the foreman, should deliberately testify against this plaintiff in order to defeat his claim for compensation if he were justly entitled thereto, if in fact they were protected by insurance as they state.
It is difficult to imagine a case with more contradictory evidence in so far as the actual occurrence of the accident is concerned. Nevertheless, apparently the trial Judge, who heard the witnesses, believed that the accident actually occurred as testified by plaintiff and his witnesses, or else he would have dismissed the case at the outset. The question before us is whether or not he committed any manifest error in believing the plaintiff and his witnesses, which we cannot do under the existing circumstances.
In so far as the amount of disability sustained is concerned, the evidence is not very clear, but seems to preponderate in favor of plaintiff to the effect that he was disabled from performing hard manual labor after the accident. It is true that he performed manual labor subsequent to his alleged accident for a period of some five months but it appears from the evidence that this manual labor was performed while plaintiff was suffering pain and was work of a light nature and was performed because of necessity. In view of these circumstances, we find that the disability of plaintiff was actually caused by the accident. However, we find that such disability had ceased to exist on December 20, 1948, the date plaintiff was examined by Dr. Marcello, and that plaintiff is entitled to compensation from Nov. 21, 1947 to that date. The plaintiff has failed to prove any medical expenses.
For these assigned the judgment appealed from is amended by reducing the period of compensation of one hundred weeks to a period from November 21, 1947 to December 20, 1948, and as thus amended the judgment is affirmed. *Page 263